## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 96-CA-00670-SCT

*KENNY JOHNSON*

*v.*

*ANN LEE, DIRECTOR OF CLASSIFICATION;*
*RAYMOND ROBERTS, SUPERINTENDENT; WILLIE*
*BROWN, SERGEANT AT THE STATE PRISON AND*
*TOMMY ROSS, MAJOR AT THE STATE PRISON*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/28/96 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL BY: JANE L. MAPP |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/9/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/30/97 |

**BEFORE SULLIVAN, P.J., ROBERTS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

Appellant Kenny Johnson is a state-convicted felon, incarcerated at the Mississippi State Penitentiary in Parchman, Mississippi ("Parchman"). On September 5, 1995, Mississippi Department of Corrections ("MDOC") employee Captain Tommy Ross received an anonymous letter stating that Johnson and several other inmates were planning a gang fight in Unit 29-L Building where they were housed. Thereafter, Sergeant Willie Brown issued Johnson a detention notice stating that Johnson was a known gang member and had received a total of eighteen (18) Rule Violations Reports (RVRs) since being incarcerated, and due to the severity of the incident he should be placed in administrative segregation pending reclassification to D-Custody[1]. Subsequently, the MDOC Classification Committee reclassified Johnson to D-Custody and he was transferred to Unit 32-D.

On October 19, 1995, Johnson filed a grievance and proceeded through the various stages of the MDOC's Administrative Remedies Program (ARP). Johnson's grievance was denied at all levels of the ARP; consequently, he sought judicial review in the Circuit Court of Sunflower County. Honorable Gary Evans dismissed Johnson's appeal stating that "Mississippi will not review any disciplinary decision unless the appellant shows the Superintendent's decision was arbitrary, he abused his discretion, or the appellant alleges a constitutional violation" and "[t]his is not the case here." Johnson then filed a Notice of Appeal in the Circuit Court of Sunflower County and Judge Evans granted him *in forma pauperis* status and held "that his original complaint was a Post-Conviction Relief Motion complaining of being reduced in classification."

Johnson now appeals *pro se*, the Circuit Court's decision and cites two (2) issues:

> **I. WHETHER THE LOWER COURT ABUSED ITS DISCRETION WHEN IT DISMISSED APPELLANT'S MOTION TO SHOW CAUSE.**

> **II. WHETHER APPELLANT IS BEING HELD IN D-CUSTODY IN DIRECT VIOLATION OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS IN CONDITIONS MORE BURDENSOME AND PREJUDICIAL THAN PERMITTED BY LAW OR REQUIRED BY THE FACTS OF THIS CASE.**

The State maintains that while the trial court's reason for dismissal may not have been totally accurate, dismissal of Johnson's complaint was correct. The State also raises an issue regarding the trial court allowing Johnson to appeal *in forma pauperis*.

## LEGAL ANALYSIS

**I. WHETHER THE LOWER COURT ABUSED ITS DISCRETION WHEN IT DISMISSED APPELLANT'S MOTION TO SHOW CAUSE.**

The Circuit Court has statutory authority to review Johnson's appeal. "Any offender who is aggrieved by an adverse decision rendered pursuant to any administrative review procedure . . . may, . . . seek judicial review of the decision." Miss. Code Ann. § 47-5-807 (1993). However, an examination of federal case law indicates that review of prison administrative matters is extremely limited.

> Security is a central concern of prison officials. ***Bell v. Wolfish***, 441 U.S. 520, 546-47, 99 S.Ct. 1861, 1878, 60 L.Ed. 2d 447, 473 (1979). Because prison administrators are best suited to determine the practices and procedures necessary to maintain security, their decisions will be upheld unless they have exaggerated their response to security and discipline considerations so that their actions are **unreasonable and arbitrary**. ***Bell v. Wolfish***, 441 U.S. at 548; 99 S. Ct. At 1878 - 79, 60 L.Ed. 2d at 474, ***Sullivan v. Ford***, 609 F.2d 197, 198 (5th Cir.), *cert. denied*, 446 U.S. 969, 100 S. Ct. 2950, 64 L.Ed. 2d 829 (1980).

> . . . .

> Under Mississippi state law, the classification of inmates is the responsibility of the Department of Corrections, and an inmate has no right to a particular classification. Miss. Code Ann. §§ 47-5-99 through 47-5-103. . . . [P]rison officials have broad discretion in classifying prisoners in terms of their custodial status. ***Wilkerson v. Maggio***, 703 F.2d 909, 911 (5th Cir. 1983);

*McGruder v. Phelps*, 608 F.2d 1023, 1026 (5th Cir. 1979); *Cruz v. Beto*, 603 F.2d 1178, 1185 (5th Cir. 1979).

*Tubwell v. Griffith*, 742 F.2d 250, 252-53 (5th Cir. 1984) (emphasis added). *See also Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981) (holding that court must uphold prison administrator's decision unless arbitrary and capricious).

The lower court's Order indicates that Johnson appealed the Superintendent's decision regarding a Rule Violation Report and such an appeal is not permissible. Even though this is not an entirely accurate statement of Johnson's appeal, the final result remains the same. Johnson's appeal is not in regard to an RVR decision but is pertaining to his reclassification based on past RVRs (among other factors). Nonetheless, Johnson's reclassification was done in accordance with MDOC policy and procedure and was based on several factors: (1) anonymous letter indicating Johnson's involvement in planning a gang fight; (2) known gang member; and (3) RVRs for having knives, refusing to work and interfering with the orderly running of the institution. Based on these factors, Johnson's reclassification was not arbitrary and unreasonable and his appeal was properly dismissed by the lower court.

Johnson raises sub-issues in regards to the procedures utilized by the Reclassification Committee. Specifically, Johnson alleges that the Reclassification Committee was improper in that "only four (4) persons were present . . . ." However, there is no merit to this allegation in that Miss. Code Ann. § 47-5-101 (1993) specifically provides for four (4) members on the Classification Committee, and the Staff Request for Inmate Re-Classification was signed by four members. Johnson also alleges that the Committee's "reliance on . . . past disciplinary record for the purposer [sic] of Xlassification [sic] was impermissible . . . ." Likewise, there is no merit to this allegation since prison policy specifically states that the Classification Committee **will** review, among other things, the inmate's disciplinary record, attitude toward authority, and institutional record on previous work assignments. MDOC Policy and Procedure Number 08.17.1 (effective April 3, 1992) (emphasis added). The factors provided by the Classification Committee for Johnson's reclassification were appropriate considerations. Instead of undermining the Committee's decision, these arguments provide further justification for the resulting D-Custody classification and illustrate that the committee's actions were not arbitrary or unreasonable.

### II. WHETHER APPELLANT IS BEING HELD IN D-CUSTODY IN DIRECT VIOLATION OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS IN CONDITIONS MORE BURDENSOME AND PREJUDICIAL THAN PERMITTED BY LAW OR REQUIRED BY THE FACTS OF THIS CASE.

This issue is controlled by this Court's holding in *Carson v. Hargett*, 689 So. 2d 753 (Miss. 1996), wherein an inmate appealed his reclassification to "close confinement" or C-Custody after receiving an RVR for possession of altered money orders. Carson cited the United States Supreme Court decision in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed. 2d 418 (1995) in support of his contention that reclassification "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Carson*, 689 So.2d at 754. In *Sandin*, inmate Conner received 30 days Segregation for disciplinary infractions after interfering with correctional duties when he directed foul and angry language at the correctional officer who performed a strip search

which included a rectal examination. Conner's request to present witnesses at the adjustment committee[(2)] was refused; consequently Conner alleged that he had been deprived of "procedural due process in connection with the disciplinary hearing." *Carson*, 515 U.S. at 476. The Supreme Court held that an offender's liberty interest protected by the Due Process Clause is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. The Court further noted that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law" and thus Conner's case was not a "dramatic departure" from the basic conditions of a prison sentence. *Id*. at 485.

In accordance with *Sandin*, this Court held that Carson's argument regarding reclassification is without merit because "Carson has no liberty interest in his classification to the general population" in that no statute confers a right to a particular classification. *Carson*, 689 So. 2d at 755.

> His new classification, while less appealing than his prior classification, does not lengthen his sentence nor does it impose an atypical and significant hardship in relation to the ordinary incidents of prison life. . . . While he may have lost the privileges he had in Unit 29, his behavior clearly posed a security risk, and the committee was free to classify him where they saw fit. The loss of these privileges does not illustrate a significant hardship amounting to a liberty interest for the purposes of judicial intervention per *Sandin*. **This challenge is merely one based on classification, which is an administrative decision beyond judicial reproach in this instance.**

*Id*. (emphasis added).

Furthermore, the Fifth Circuit Court of Appeals recently ruled that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be ground for a constitutional claim, . . . " *Pichardo v. Kinker*, 73 F.3d 612 (5th Cir. 1996). In this case, inmate Pichardo was placed in administrative segregation due to his being classified as a gang member. The magistrate judge conducted a hearing to determine if the inmate's due process had been violated and determined that Pichardo could not show "abuse of the prison officials' discretion in continuing to classify Pichardo as a gang member."[(3)] *Id*. at 613. The 5th Circuit upheld the district court's dismissal of Pichardo's complaint as frivolous under 28 U.S.C. § 1915 since there was no basis in law or fact to support Pichardo's claim that the prison "policies covering an inmate's placement and continued confinement in administrative segregation create a protectable liberty interest." *Id*.

As in *Carson*, Johnson relies on *Sandin*, and states "[i]n view of the Supreme Court's decision in *Sandin* . . . Johnson, states a claim that inmates have a liberty interest in remaining free from segregation which imposed 'atypical and significant' hardship in relation to the ordinary incidents of prison life." Likewise, in accordance with this Court's holding in *Carson* and the Fifth Circuit's holding in *Pichardo*, Johnson's argument must also fail.

### III. DID THE TRIAL COURT ERR IN ALLOWING JOHNSON TO APPEAL *IN FORMA PAUPERIS*?

Mississippi law contains provisions for the MDOC to pay court costs for inmates filing civil actions pertaining to the conditions of confinement.

> [I]f an inmate plaintiff files a pauper's affidavit in a civil action and the defendant is an employee of the department and the civil action pertains to the inmate's condition of confinement, the department shall pay, out of any funds available for such purpose, all costs of court assessed against such inmate in such civil action.

Miss. Code Ann. § 47-5-76(1) (Supp. 1997). Furthermore, subsection (2) provides that the inmates must use funds from their inmate account (if any are available) when filing civil actions such as in the case *sub judice*.

This Court interpreted this statute to allow "an inmate plaintiff only to proceed *in forma pauperis* at the trial level, . . . but not at the appellate level." ***Moreno v. State***, 637 So. 2d 200, 202 (Miss. 1994). Therefore, an inmate has no right to appeal *in forma pauperis* in any other than a criminal case or an action for post-conviction relief pursuant to Miss. Code Ann. § 99-39-1 et seq. ***Id***. Thus, Johnson and other inmates filing complaints regarding custody classification should not be granted *in forma pauperis* standing to appeal the dismissal of these suits. Additionally, if the court follows the Fifth Circuit's example and determines that the lawsuit should be dismissed as being frivolous, the inmate is required to pay all costs of court incurred. Miss. Code Ann. § 47-5-76(2) (Supp. 1997).

## CONCLUSION

"Under Mississippi state law, the classification of inmates is the responsibility of the Department of Corrections, and an inmate has no right to a particular classification." ***Tubwell v. Griffith***, 742 F.2d 250, 253 (5th Cir. 1984). Additionally, the trial court will not overturn prison administrator's decisions regarding custody unless it is shown that these decisions are arbitrary and unreasonable. Johnson's reclassification was conducted in accordance with MDOC policy and procedure and thus was not arbitrary and unreasonable. Accordingly, the trial court 's dismissal of Johnson's Motion to Show Cause is affirmed.

Additionally, in accordance with this Court's holding in ***Moreno v. State***, 637 So. 2d 200, 202 (Miss. 1994) inmates filing complaints regarding custody classification should not be granted *in forma pauperis* standing to appeal the dismissal of these suits. Instead, where there is no basis in law or fact to support their claims, these suits should be dismissed as being frivolous and the inmate required to pay all costs of court incurred. ***See Pichardo v. Kinker***, 73 F.3d 612 (5th Cir. 1996); Miss. Code Ann. § 47-5-76(2) (Supp. 1997).

**JUDGMENT AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND MILLS, JJ., CONCUR.**

1. Except for Disciplinary Detention, D-Custody is the most restrictive custody level of the MDOC.

It is a form of separation from the general inmate population by a MDOC Classification Committee where the inmate's behavior and conduct pose a long term, serious threat to life, property, self, staff, other inmates, or the secure and orderly running of the institution/facility. MDOC Standard Operating Procedures 08.18.1 (effective May 1, 1995).

2. Under Hawaii Administrative Rules and Procedures misconduct is punished through adjustment committee procedures. *Sandin*, 515 U.S. 472, 475 n.1 (1995). This is comparable to the MDOC's procedures which call for committee review of reclassifications.

3. At the hearing inmate Pichardo denied gang affiliation but testified that he received periodic review concerning his gang classification. The prison warden explained that prison procedures for classifying inmates as gang members includes placement in administrative segregation with ninety (90) day reviews to determine continued affiliation. MDOC policy also provides for periodic review in that an inmate may not be held in Administrative Detention pending Reclassification for more than 15 days. MDOC Policy and Procedure Number 08.17.1 (effective April 3, 1992). Upon reclassification to D-Custody, the classification committee is required to review this status annually, but **may** review it at any time, when deemed necessary. MDOC Standard Operating Procedures Number 08.18.1 (effective May 1, 1995).