IN THE SUPREME COURT OF MISSISSIPPI

NO. 95-CA-00578-SCT

*WALTER CARSON*

*v.*

*EDWARD HARGETT, SUPERINTENDENT, MISSISSIPPI STATE PENITENTIARY; CHRISTOPHER EPPS, DIRECTOR, OFFENDER SERVICES, MISSISSIPPI STATE PENITENTIARY; AND EARL JACKSON, CASE MANAGER SUPERVISOR OF AREA V*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/24/95 |
| TRIAL JUDGE: | HON. EUGENE M. BOGEN |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEES: | JAMES M. NORRIS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/10/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/31/96 |

**BEFORE DAN LEE, C.J., PITTMAN AND MILLS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

¶1. Originally, this opinion was designated not for publication. The Mississippi Department of Corrections subsequently moved the Court to publish the opinion. Finding the motion to be well taken, we withdraw the unpublished opinion and substitute this one therefor.

¶2. Walter Carson appeals the denial of his Petition for a Writ of Habeas Corpus in the Circuit Court of Sunflower County. Carson sought in his petition to have his prison classification changed from close confinement to general population. The lower court found that none of Carson's constitutional rights had been violated and further ruled that it did not have jurisdiction to hear classification matters.

¶3. On January 1, 1993, Carson was classified to close confinement by a classification committee because of a major rules violation report ("RVR") pending for possession of altered money orders. On August 13, 1993, a classification committee reviewed Carson's status. It was noted then that Carson had been sentenced on July 8, 1993, to fifteen years with ten suspended to run consecutively for possession of altered money orders. The classification committee voted to continue Carson's close confinement classification. Essentially, this amounts to assignment in Unit 32 or "C" custody.

¶4. Carson claims that the lower court erred because his constitutional rights to equal protection, due process and the right to be free from cruel and unusual punishment were violated by his classification to close confinement. Specifically, Carson alleges that his rights were violated when he was reclassified from Unit 29 to Unit 32 for more than a year. He asserts that this imposed an "atypical and significant hardship" on him by causing a major disruption to his environment due to the fact that he has been without phone privileges, movie privileges, etc.

¶5. In support of his position, he cites *Sandin v. Conner,* 115 S.Ct. 2293 (1995). In *Sandin*, the United States Supreme Court returned to the principles concerning prisoners' liberty interests it espoused in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2693, 41 L.Ed.2d 935 (1974), and *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). That is, that states may, under certain circumstances, create liberty interests which are protected by the Due Process Clause. *Sandin*, 115 S.Ct. at 2300[1]. The *Sandin* Court further stated that

> [T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force [cites omitted], nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* This is the basis of Carson's claim.

¶6. The inmate in *Sandin* alleged that Sandin and other officials deprived him of procedural due process when an adjustment committee refused to allow him to present witnesses during a disciplinary hearing and then sentenced him to segregation for misconduct. *Id.* at 2294. The inmate asserted that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause. The Supreme Court found that the inmate's discipline in segregated confinement did not present the type of atypical significant deprivation in which a state might create a liberty interest. *Id.* at 2301. In *Sandin*, the Supreme Court noted that at the time of the inmate's punishment, disciplinary segregation mirrored those conditions imposed upon inmates in administrative segregation and protective custody. Therefore, the inmate's confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction. *Id.* at 2301.

¶7. Carson argues that his assignment to Unit 32 for more than a year imposes an atypical significant deprivation in which the State has created a liberty interest. Particularly, he points to the differences between those prisoners that are not on close confinement and those that are. This argument is without merit. In order for Carson's liberty interest claim to succeed based on *Sandin*, he would need to show different conditions for those similarly situated inmates in Unit 32. Otherwise, he is just challenging the change in his classification from Unit 29 to Unit 32.

¶8. In *Tubwell v. Griffith*, 742 F.2d at 250, (5th Cir. 1984), the Fifth Circuit ruled that, based on the Code, the classification of inmates is the responsibility of the Mississippi Department of Corrections. Citing Miss. Code Ann. §§ 47-5-99 through 47-5-103 and *Meachum*, the Fifth Circuit found that an inmate has no liberty interest in his custody classification. *Tubwell*, 742 F.2d at 253.

¶9. Likewise, we hold that Carson has no liberty interest in his classification to the general population. The Mississippi Code commits to the classification committee the duties of hearing evidence and the making of decisions in all cases whereby an offender is subject to being demoted.

Miss. Code Ann. § 47-5-104 (1972). None of the statutes confers a right to a particular classification. His new classification, while less appealing than his prior classification, does not lengthen his sentence nor does it impose an atypical and significant hardship in relation to the ordinary incidents of prison life. There is no indication he is treated any differently than those in his unit. While he may have lost the privileges he had in Unit 29, his behavior clearly posed a security risk, and the committee was free to classify him where they saw fit. The loss of these privileges does not illustrate a significant hardship amounting to a liberty interest for the purposes of judicial intervention per *Sandin*. This challenge is merely one based on classification, which is an administrative decision beyond judicial reproach in this instance.

¶10. The State contends that Carson should pay the costs of this action. Section 47-5-76 of the Code requires the MDOC to pay court costs for an inmate plaintiff proceeding in forma pauperis in a civil action against Department employees pertaining to conditions of confinement. This applies at the trial level and not at the appellate level. *Moreno v. State*, 637 So. 2d 200, 202 (Miss. 1994). The State argues that this action is a civil action which Carson has disguised as a petition for writ of habeas corpus in order to take a free appeal. The State asserts that because Carson did not seek release of his body from incarceration, but rather a different classification, then habeas corpus is not available to him. And further they argue that habeas corpus relief was abolished by the Post-Conviction Collateral Relief Act. Carson cites only the statute that the State must pay his costs.

¶11. The purpose of the writ of habeas corpus is to give a person restrained of his liberty an immediate hearing so that it can be determined whether that person is being deprived of constitutional rights, such as the right to due process of law. 39 C.J.S. *Habeas Corpus* § 6 (1976). In this instance, the petition for habeas corpus was an acceptable document within which to address this issue. The Petition challenges the inmate's classification as violating the inmate's constitutional rights. Because we hold today that there is no liberty interest in an inmate's classification status, any future challenges to such status should not come to this Court by way of the writ of habeas corpus.

¶12. Furthermore, the State is incorrect in its argument that the writ of habeas corpus was abolished by the Post-Conviction Collateral Relief Act. The Court stated in *Walker v. State*, 555 So. 2d 738 (Miss. 1990), "[w]e read nothing in the Post-Conviction Relief Act [cites omitted] which purports to suspend this right [habeas corpus], nor could the right ever be suspended except in the limited circumstance provided for by the constitution." *Id.* at 740.

¶13. Classification is an administrative decision and no constitutional right of Carson's was violated; therefore, the lower court correctly ruled that it had no jurisdiction. This case is affirmed for that reason.

¶14. **AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ. CONCUR. LEE, C.J., CONCURS IN RESULT ONLY.**

1. The Supreme Court diverged from *Wolff* and *Meachum* in *Hewitt v. Helms*, 459 U.S. 460 (1983), holding that the focus of the liberty interest inquiry should be based on the language of a particular prison regulation rather than one based on the nature of the deprivation. The Supreme Court came

full circle in *Sandin* holding that the search of regulations for negative implications arising from mandatory language strayed from the real concerns undergirding the liberty protected by the Due Process Clause. *Sandin*, 115 S.Ct. At 2300.