# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00626-SCT

*MICHAEL BROWN*

*v.*

*OTHIEAL CLARK, UNIT MANAGEMENT TEAM CHAIRMAN, AND MRS. ANN LEE, DIRECTOR OF CLASSIFICATION*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/22/96 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JANE LANIER MAPP |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/02/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/23/97 |

**BEFORE SULLIVAN, P.J., ROBERTS AND SMITH, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

Michael Brown appeals the denial of his Petition for a Writ of Habeas Corpus in the Fourth Circuit Court of Sunflower County. In the petition, he asserted that his constitutional right to due process was denied when he was reclassified and placed in administrative segregation from the general population by the classification committee. Since we find that Brown's constitutional rights were not violated, we affirm the trial court's denial of his petition.

Prior to September 22, 1995, Michael Brown was incarcerated and assigned to unit 25 at the MS State Penitentiary. However, on that date Brown received a detention notice stating that he was being moved to unit 32, administrative segregation, pending a classification review. In support of the administrative segregation, the notice stated:

This offender poses a serious threat to life, property, self, staff, other inmates, and the safety and security of this institution. A letter was intercepted by a staff member implicating this offender as being involved in a planned demonstration that would involve a massive disruption at several units of this institution. Due to the seriousness of this matter administrative segregation is warranted.

Part II of the detention notice informed Brown of his right to 1.) call witnesses, 2.) present written statements, 3.) have these incidents investigated by an investigating employee, 4.) counsel, after formal charges have been filed for a major violation, and 5.) a meeting with the Classification Team within 72 hours. Brown refused to sign the notice which informed him of these rights, and this refusal was noted by the approving authority.

Four days after the detention notice, on September 26, 1995, Brown met with a classification team chaired by appellee, Othieal Clark, to determine the validity of the complaint and the committee's recommendation regarding Brown's classification. This committee recommended that Brown remain in Unit 32 and be placed on close confinement D custody due to Brown's leadership in gang activities and his admitted membership in the black gangster disciples. The committee stated in the report that Brown's classification status would be reviewed periodically.

After exhausting all internal review of his claim under the Administrative Remedy Program, Brown filed a Writ of Habeas Corpus in the Circuit Court of Sunflower County against Othieal Clark, Unit Management Team Chairman, and Ann Lee, Director of Classification. Brown's petition was dismissed on May 22, 1996, in an order signed by Circuit Judge Gray Evans wherein he stated:

Inmate Brown complains that he has been improperly classified by being reduced to D custody for being involved in a planned demonstration. MDOC Policy No. 08.18 provides that an inmate may be separated from the general inamat [sic] population for this type of behavior. The committee may review the status of inmates in D custody annually.

Aggrieved of the lower court's ruling, Brown assigns as error the following:

**I. WHETHER THE LOWER COURT ABUSED ITS DISCRETION WHEN IT DISMISSED APPELLANT'S HABEAS CORPUS.**

**II. WHETHER THE APPELLANT IS BEING HELD IN D-CUSTODY IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND PROCEDURAL DUE PROCESS OF THE LAW.**

## STATEMENT OF THE LAW

It should be noted at the outset that *Carson v. Hargett*, 689 So. 2d 753 (Miss. 1996) is controlling in this case. The facts in *Carson v. Hargett* are very similar to the present action in that the appellant in *Carson* was also classified to close confinement by a classification committee based on a major rules violation report for possession of altered money orders. *Id*. at 753-54. Carson, like Brown in the present case, appealed the dismissal of his petition for a writ of habeas corpus alleging his constitutional right to due process was violated when he was reclassified from Unit 29 to Unit 32. *Id.* at 754. This Court held that "Classification is an administrative decision and no constitutional right of

Carson's was violated; therefore, the lower court correctly ruled that it had no jurisdiction." *Id.* at 755. In addition, Brown does not raise any issue that suggests he is treated differently from any other inmate in Unit 32. *Id.* at 754. Notwithstanding the controlling authority cited, each of the two issues raised on appeal by Brown will be addressed on the merits.

## I.

### WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION WHEN IT DISMISSED APPELLANT'S WRIT OF HABEAS CORPUS

This Court, in determining the proper standard of review from the dismissal of a writ of habeas corpus, stated:

> We are also committed to the proposition that where the evidence is in conflict on this question of whether the proof is evident or presumption of guilt is great that the Judge at the habeas corpus hearing is the trier of fact, and, that it is presumed that he has properly applied the law to the facts as found, and his findings will not be set aside or overturned unless, from the evidence, it is manifest to us that he is clearly in error.

*Blackwell v. Sessums*, 284 So. 2d 38, 39 (Miss. 1973).

Brown contends that the lower court's dismissal of his petition was unreasonable, arbitrary and fanciful due to the failure of the lower court to require an evidentiary hearing to ensure that the classification process was not procedurally defective. Brown relies on several cases explaining that a reviewing court should determine the lower court has abused its discretion when its decision is clearly unreasonable, arbitrary or erroneous. When considering this standard, Brown's argument is without merit since the circuit court, in rendering its decision, had before it exhibits that revealed investigations of Brown's involvement in gang related activities conducted both during the seventy-two-hour review as well as during the Administrative Remedies Program. The judge acted on sufficient evidence and there is nothing in the record, or in Brown's brief, to support a proposition that the lower court's decision was clearly in error. *Blackwell,* 284 So. 2d at 39. Consequently, this issue is without merit.

The State argued that the lower court erred in allowing Brown to appeal the dismissal in forma pauperis. In support of the argument, they stated that an inmate has no right to appeal in forma pauperis other than in a criminal case or an action for post-conviction relief. *Moreno v. State*, 637 So. 2d 200 (Miss. 1994). This Court held in *Moreno v. State,* that Miss. Code Ann. § 47-5-76 only allows an inmate plaintiff to proceed in forma pauperis to challenge his conditions of confinement at the trial level and not at the appellate level. *Moreno*, 637 So. 2d at 201. However, this Court addressed this issue in *Carson v. Hargett* and determined that a writ of habeas corpus was a proper avenue to appeal an alleged constitutional violation pertaining to an inmate's reclassification. *Carson*, 689 So. 2d at 755. But, as we reiterate today,"there is no liberty interest in an inmate's classification status, and any future challenges to such status should not come to this Court by way of the writ of habeas corpus." *Id*. at 755.

## II.

**WHETHER THE APPELLANT IS BEING HELD IN D-CUSTODY IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW**

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; Miss. Const. art. III, § 14. Although the U.S. Constitution protects prisoners placed in state institutions, because of the prisoners conviction, these rights have been limited based on necessity. ***Wolff v. McDonnell,*** 418 U.S. 539, 556-57 (1974); ***McFadden v. State***, 542 So. 2d 871, 875 (Miss. 1989). The beginning analysis of any due process claim is to determine if in fact there is a recognized protected property or liberty interest. There are two sources in which a liberty interest protected by the Fourteenth Amendment may arise, the Due Process Clause itself and State laws. ***Meachum v. Fano***, 427 U.S. 215, 223-227 (1976); ***Hewitt v. Helms***, 459 U.S. 460, 468 (1983). An inmate does not have a federally created liberty interest in remaining in a particular unit within a correctional institution. ***Meachum v. Fano,*** 427 U.S. 215 (1976); ***Montanye v. Haymes,*** 427 U.S. 236 (1976); ***Wilson v. Budney,*** 976 F.2d 957 (5th Cir. 1992). However, an inmate may have a protected liberty interest created by state law. ***Hewitt v. Helms,*** 459 U.S. 460 (1983); ***Dzana v. Foti,*** 829 F.2d 558 (5th Cir. 1987). The Supreme Court in ***Hewitt*** explained that local statutes and regulations may create a liberty interest if they carry mandatory force and significantly limit prison authorities' discretion. 459 U.S. at 471-72.

The Mississippi legislature, according to Miss. Code Ann. §§ 47-5-99 through 103 (1993), has given discretion to the Department of Corrections in determining the classification of inmates and "an inmate has no right to a particular classification." ***Tubwell v. Griffith,*** 742 F.2d 250, 253 (5th Cir. 1984). Miss. Code Ann. § 47-5-103 (1993) states, "The [classification] committees shall establish substantive and procedural rules and regulations governing the assignment and alteration of inmate classifications, and shall make such rules and regulations available to any offender upon request." This statute, to further protect an inmate from wrongful reclassification, was amended in 1995 to allow a classification board to change an inmate's classification if it finds the action of the committee to be unsupported by sufficient factual information. Miss. Code Ann. § 47-5-103 (Supp. 1997). This Court has interpreted the language of these statutes in ***Carson v. Hargett*** and found that "[n]one of the statutes confers a right to a particular classification." ***Carson***, 689 So. 2d at 755. The Fifth Circuit explained, "[it] is well settled that 'prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'"***McCord v. Maggio***, 910 F.2d 1248, 1250 (5th Cir. 1990) (quoting Wilkerson v. Maggio, 703 F. 2d 909, 911 (5th Cir. 1983)). Considering the language of Parts I, II, and III of the Detention Notice given to Brown, and the fact that no action was taken on Brown's behalf by a classification board, the Department of Corrections has fulfilled its legal responsibility to Brown as directed by Miss. Code Ann. § 47-5-104 (1993).

Brown's appeal is very similar to the appeal in ***Sandin v. Conner***, 515 U.S. 472 (1995). In ***Sandin v. Conner***, the inmate, incarcerated in a maximum security prison, was charged with "high misconduct" because of his interference with a strip search, and "low moderate misconduct" for using profanity during the search. As a result of the misconduct, the inmate was segregated from the general prison population and placed in isolation. The Court held, "that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." 515 U.S. at 486.

In the present appeal, Brown's segregation from the general population was based on a finding of his leadership role in gang activities and admitted membership in the black gangster disciples that posed a serious threat to life, property, self, staff, other inmates, and the safety and security of the prison. His segregation in no way extends his sentence and does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Therefore, his constitutional claim of a violation of due process of law is without merit since he has no protected liberty interest in his change of classification and therefore, has not stated a claim which implicates the due process clause.

Brown also asserts he was denied 1.) a Miranda warning, which is inapplicable to the present situation, 2.) notice of his alleged infraction, 3.) notice of his right to have the incident investigated, and 4.) notice of his right to summon witnesses to a hearing. These assertions are without merit since each of these rights, except for a Miranda warning, are clearly stated in Part II of the detention notice which Brown refused to sign acknowledging these rights. In addition, Brown was given notice of his detention and received a hearing ; therefore, these procedures satisfy the due process requirements. *Terrell v. State*, 573 So. 2d 730, 732 (Miss. 1990). All of these arguments are without merit, because in order to determine if the due process that was given was sufficient, Brown must first establish that he has a constitutionally protected liberty interest, which he has failed to prove. As a result, it is unnecessary to discuss what procedural requirements would otherwise be required.

## CONCLUSION

Brown has failed to establish that he has a protected liberty interest in his reclassification to another unit within the state penitentiary. Therefore his procedural arguments must also fail since this Court should not determine what process is due after determining there is no constitutionally protected liberty interest violated. The lower court properly dismissed Brown's petition for a writ of habeas corpus. Accordingly, the judgment below is affirmed.

**AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**