# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00738-COA

**MARCUS TAYLOR**                                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/01/2023 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | CHOCTAW COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAMON RAMON STEVENSON |
| | JOSEPH SCOTT HEMLEBEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 05/06/2025 |
| MOTION FOR REHEARING FILED: | 06/02/2025 - GRANTED; REVERSED AND RENDERED - 11/18/2025 |

### EN BANC.

### McCARTY, J., FOR THE COURT:

### ON MOTION FOR REHEARING

¶1. The motion for rehearing is granted. The previous opinions of this Court are withdrawn, and these opinions are substituted in their place.

¶2. The question this Court must decide is whether we are required to deny relief to an incarcerated man suffering under an illegal sentence. The State argues that his relief is barred by the passage of time. In our prior opinions issued on May 6, 2025, all ten members of the Court reasoned the sentence was illegal, but we were split evenly on how to address it, ultimately leaving the man's excessive sentence intact.

¶3.     Upon rehearing, we find that Marcus Taylor was erroneously sentenced to a term of years beyond the five years authorized by the Legislature. In sentencing Taylor to a term of fifteen years—ten beyond the maximum—the trial court exceeded its jurisdiction. When a trial court acts outside the scope of its authority, its actions are void. As over a century of precedent firmly establishes, our Judiciary has the inherent power to correct this error, and therefore we reverse and render.

* * * * *

### *Taylor is indicted and pleads guilty.*

¶4.     In 2014, a Choctaw County grand jury indicted Taylor on three counts: First, for conspiracy to sell "Hydrocodone Acetaminophen, a schedule III controlled substance;" second, for conspiracy to sell "Promethazine with Codeine, a schedule V controlled substance;" and last, business burglary for breaking and entering a drugstore to steal drugs. All offenses were alleged to have been committed on or about December 7, 2013. Taylor was indicted as a nonviolent habitual offender. The case was prosecuted by the Office of the Attorney General.

¶5.     In February 2015, Taylor, represented by counsel, accepted a plea bargain. Under the terms of the plea, he would plead guilty to Count I as a habitual offender, and the State would recommend a sentence of fifteen years in the custody of the Mississippi Department of Corrections. Counts II and III would be dismissed, and "any other pending charges in other counties related to burglary of a pharmacy [would] be dismissed."

¶6.      Taylor's plea petition acknowledged that the maximum sentence for Count I,

2

conspiracy to sell a schedule III controlled substance, was twenty years. This was wrong.

¶7. At his plea hearing, Taylor pled guilty to Count I, conspiracy to sell "a schedule III controlled substance." At least six times during the hearing, the trial court or the State specifically stated that Count III involved "a schedule III controlled substance."

¶8. The trial court advised Taylor that the maximum sentence for Count I was twenty years. This was also wrong.

¶9. As the factual basis for the charge, the prosecutor stated that if the case went to trial, the State would prove that Taylor and three accomplices broke into Ackerman Discount Drugs and stole "Hydrocodone Acetaminophen," "which is a schedule III controlled substance," and conspired to sell the drugs. Taylor agreed that he was guilty of Count I as described. The prosecutor stated that the State had agreed to dismiss Counts II and III of the indictment and "to not pursue or dismiss any other charges or indictments related to drugstore burglaries [in other] counties," including but not limited to "Carroll, Lincoln, Pike, Yalobusha, and Warren Counties." Taylor agreed to give truthful testimony against any of his co-defendants in any of those counties. The court accepted Taylor's guilty plea and sentenced him to serve fifteen years in the MDOC's custody as a nonviolent habitual offender.

¶10. The judgment, which the circuit court signed the same day, did not accurately record Taylor's plea. The judgment correctly stated that Taylor pled guilty to Count I of the indictment and that Counts II and III were dismissed.

¶11. But the judgment erroneously stated that Taylor had been indicted for three counts of

3

business burglary. The judgment did not mention the *actual* charge to which Taylor pled guilty: conspiracy to sell a schedule III controlled substance. *See* Miss. Code Ann. § 97-1-1 (Supp. 2007).

¶12. Consistent with the trial court's pronouncement, the judgment sentenced Taylor to serve fifteen years in MDOC custody as a nonviolent habitual offender.

¶13. One year later, Taylor, represented by a new attorney, filed a "motion to reconsider sentencing" in which he claimed that "[d]ue to some confusion and miscommunication, [Taylor] believe[d] that he pleaded guilty to Business Burglary which carries a maximum sentence of seven years." *See* Miss. Code Ann. § 97-17-33(1) (Rev. 2006). Taylor asked the court to resentence him consistent with the maximum sentence for business burglary.

¶14. In response, the State filed a motion to amend the judgment to show that Taylor pled guilty to conspiracy to sell "a schedule III controlled substance." The State characterized the original judgment's indication that Taylor pled guilty to burglary as a "scrivener's error."

¶15. In March 2016, the trial court[1] entered a corrected judgment recognizing that the original judgment should have stated that Taylor pled guilty to conspiracy to sell "a Schedule III Controlled Substance," not business burglary. The corrected judgment made no change to Taylor's sentence.

¶16. Two days later, the trial court denied Taylor's motion to reconsider the sentencing. The trial court stated that it had reviewed Taylor's plea petition and the transcript of his plea

---

[1] Judge Clarence E. Morgan III accepted Taylor's plea, sentenced Taylor, and entered the original judgment in the case. Judge Morgan retired in December 2015, and Judge Joseph H. Loper Jr. presided over all subsequent proceedings in the case.

4

hearing and found that it was "clear" that Taylor "was fully aware" he was pleading guilty to conspiracy to sell "a Schedule **II** controlled substance" and that the sentence imposed was consistent with Taylor's plea bargain and plea petition. (Emphasis added).

¶17. The trial court acknowledged that the original judgment "contained a clerical error" in indicating that Taylor pled guilty to business burglary when, in fact, he pled guilty to conspiracy to distribute "a Schedule **II** controlled substance." (Emphasis added). This order's two references to "a Schedule II controlled substance" are the only such references to "a Schedule II controlled substance" in the entire record.

### *Taylor seeks post-conviction relief.*

¶18. Seven years passed. In March 2023, Taylor, again represented by his original attorney, filed a rather unusual PCR motion. Although it was styled as a PCR motion and cited the Uniform Post-Conviction Collateral Relief Act, the motion did not articulate any cognizable ground for relief under the Act. Rather, Taylor argued that he had "been rehabilitated during his term of incarceration"; that his prior criminal history was attributable to his youth, "peer pressure," and a lack of education; that two of his co-defendants had already been released from custody; and that his children and elderly parents needed his support. For all these reasons, Taylor asked the court "to resentence him with parole eligibility" as a non-habitual offender under the UPCCRA.

¶19. The trial court denied Taylor's motion. The court recounted the case's procedural history: that in 2015, Taylor pled guilty to conspiracy to sell "a Schedule III Controlled Substance" and was sentenced to serve fifteen years in the MDOC's custody as a habitual

5

offender; that the original "judgment contained a scrivener's error" in indicating that Taylor was sentenced for burglary rather than conspiracy to sell "a Schedule III Controlled Substance"; and that in 2016, the court entered a corrected judgment imposing the same sentence for the true crime of conspiracy to sell "a Schedule III Controlled Substance." The trial court then held that Taylor's motion was barred by the statute of limitations, that none of the statutory exceptions to the statute of limitations applied, and that the court had no authority to modify Taylor's sentence.

### *Proceedings on appeal.*

¶20. Taylor timely filed a notice of appeal. After briefing was completed, and although Taylor did not raise the issue, this Court directed the parties to provide supplemental briefing. *See* Order, *Taylor v. State*, No. 2023-CA-00738-COA (Miss. Ct. App. July 19, 2024). In that order, signed by Presiding Judge Wilson, it was pointed out that despite the fifteen-year sentence Taylor received, "the maximum prison sentence for the conspiracy to which Taylor pled guilty is only five years." Accordingly, we requested briefing on two points:

> 1. Is the maximum prison sentence for Taylor's offense five years? If so, is Taylor's fifteen-year prison sentence illegal?

> 2. Is Taylor's PCR motion nonetheless barred by the three-year statute of limitations of the Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. § 99-39-5(2) (Rev. 2020)? *See Howell v. State*, 358 So. 3d 613, 616 (¶12) (Miss. 2023).

¶21. This Court issued an evenly divided opinion on May 6, 2025, ultimately resulting in affirming the trial court's denial of Taylor's motion for post-conviction relief. The lead opinion explained that while "it is apparent that Taylor's fifteen-year sentence exceeds the

6

five-year maximum sentence for the crime to which he pled guilty," he "filed his PCR motion *eight years* after his judgment was entered," or five years too late. As a result, the lead opinion concluded that "the circuit court correctly found that Taylor's PCR motion is barred by the statute of limitations" and that he was entitled to no relief.

¶22. Taylor timely filed a motion for rehearing. Two days later, the Mississippi Office of Capital Post-Conviction Counsel sought leave to file an amicus curiae brief in support of Taylor's motion for rehearing, which was granted.

## DISCUSSION

¶23. The sole issue before the Court on rehearing is whether Taylor's excessive sentence can be challenged after the three-year time-bar set by the PCR Act. We must first examine the jurisdiction of the trial court to enter such a judgment.

### *Courts may only act when they have the power to do so.*

¶24. Earlier this year, our Supreme Court explained that "[s]ubject matter jurisdiction involves a court's power to hear a particular type of claim." *Miss. Apartment Ass'n v. City of Jackson*, 407 So. 3d 1061, 1065-66 (¶16) (Miss. 2025). A court must have subject matter jurisdiction before it exercises authority, and this is a "threshold inquiry." *Id.* at 1066 (¶16). "Generally speaking, [jurisdiction] means the power or authority of a court to hear and decide a case." *Penrod Drilling Co. v. Bounds*, 433 So. 2d 916, 922 (Miss. 1983).

¶25. In the early days of the last century, our Supreme Court explained what happens when a court exceeds its authority. It quoted with approval a court that previously grappled with a similar question of whether an action was void. "It is an axiom of the law that judgments

7

entered without any jurisdiction are void, and will be so held in a collateral proceeding[.]"

*McHenry v. State*, 91 Miss. 562, 44 So. 831, 834 (1907) (quoting *Hovey v. Elliott*, 39 N.E. 841, 844 (N.Y. 1895), *aff'd*, 167 U.S. 409 (1897)). And so "although a court had jurisdiction over both the person and the subject-matter, but did not have the jurisdiction to enter the particular judgment entered in the case," the Court determined that the general trend among courts was "to hold that . . . such judgment is void, and may be collaterally impeached." *Id.*[2]

¶26. It was from this general principle that the *McHenry* Court adopted the United States Supreme Court's reasoning that a trial court is "limited in its modes of procedure and in the extent and character of its judgments." *Id.* That is, a trial court cannot impose a different remedy than one which does not match the charge before it.

> If the action be for libel, or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will.
>
> . . . .
>
> The judgments mentioned, given in the cases supposed, would not be merely erroneous. They would be absolutely void, because the court in rendering them would transcend the limits of its authority in those cases.

*Id.* (quoting *Windsor v. McVeigh*, 93 U.S. 274, 282 (1876)). The Court continued with this analogy, reasoning that "if a court of general jurisdiction should, on an indictment for libel, render a judgment of death or confiscation of property, it would, for the same reason, be void[.]" *Id.* Judgments of this type are "in excess of the authority of the court and forbidden

---

[2] The Court believed the point could be made clearer: "Perhaps the word 'power' should be used in place of 'jurisdiction' in the last clause of this sentence, to prevent confusion of thought." *Id.*

8

by the Constitution." *Id.*

¶27.    Just one month after *McHenry*, the Court was again confronted with the import of jurisdiction—this time, specifically addressing its application in cases of habeas corpus. *Ex parte Burden*, 92 Miss. 14, 45 So. 1, 1 (1907).  Chester Burden was found guilty of assault and battery.  *Id.*  But contrary to nearly thirty years of caselaw, the jury included "mere surplusage" in their verdict that the assault and battery was based on the "intent to commit manslaughter." *Id.*

¶28.    Despite this surplusage, the Court recognized that "[w]e have, therefore, a conviction for a misdemeanor." *Id.*  But the trial court, "misinterpreting this verdict, held it to be a conviction for a felony, and sentenced the defendant to six years in the penitentiary." *Id.*

¶29.    After declaring that this was a "sentence [the trial court] had no power or jurisdiction to impose," the Supreme Court explained, "The distinction, abundantly established by authority, is between a sentence which is merely excessive or erroneous, regard being had to the particular offense, and a sentence which is absolutely void." *Id.*

¶30.    Because the Court already determined that the trial court exceeded its authority in imposing the sentence before it, the true question before the *Burden* Court—as is the one we face today—was whether this could be remedied through a collateral attack. *Id.*  Seventy-seven years before the PCR Act, the method to challenge an illegal sentence was through habeas corpus.  This was not a close question for the majority:  "Want of jurisdiction over person or subject-matter is *always* a ground for relief on habeas corpus[.]" *Id.* at 1-2. (emphasis added).  "[F]or, if the court has acted without jurisdiction, its judgment or order

9

is absolutely void, even on collateral attack[.]" *Id.* at 2.

¶31.    As the *Burden* Court ruled, even when a court has jurisdiction, it cannot *exceed* it, or it will create a void judgment.

> Even where a court has jurisdiction of the offense charged and of the person of the accused, it may so far transcend its powers in assessing the penalty for the offense, by imposing a punishment of a character different from that prescribed by law, or otherwise, that the sentence will be void and furnish no authority for holding the accused in custody, though the conviction on which the sentence was entered was valid and correct; and in such a case the accused may be discharged on habeas corpus.

*Id.* at 2.  For an "excessive judgment is one that the court did not have the power to render, and is therefore void." *Id.*

¶32.    Crucially, this did not mean that the *entire* conviction was void—only that part which exceeded the scope of the trial court's jurisdiction.  "[S]uch judgment or sentence is not void ab initio because of the excess, but that it is good so far as the power of the court extends, and is invalid only as to the excess[.]" *Id.*  Indeed, the excess then would not be subject to attack until the valid part of the sentence were served: "a person in custody under such a sentence cannot be discharged on habeas corpus until he has suffered or performed so much of it as it was within the power of the court to impose." *Id.*

¶33.    Echoing the same reasoning used in *McHenry*, the Court reiterated that "[a] sentence of a different character than that authorized by law to be imposed for the crime of which the accused has been found guilty is void, while a sentence which imposes the statutory kind of punishment is not absolutely void, although excessive." *Id.* at 3.  "In the former case the entire judgment is invalid, while as to the latter the excessive portion is alone erroneous, and

10

not void in such a sense as to be available on habeas corpus, at least until after the valid portion of the judgment has been executed." *Id.*

¶34. The majority in *Burden* held that habeas corpus was the correct avenue to challenge a void or excessive judgment; to prohibit habeas relief, the Court declared, would be to destroy a constitutional right of the citizenry: "*To deny the right of habeas corpus* in such a case *is a virtual suspension of it*; and it should be constantly borne in mind that *the writ was intended as a protection of the citizen* from encroachment upon his liberty from any source, equally as well *from the unauthorized acts of courts and judges* as the unauthorized acts of individuals[.]" *Id.* (emphasis added). Accordingly, the Court allowed the sentence to be challenged by a petition for a writ of habeas corpus. *Id.*

¶35. In the end, the Supreme Court ruled that habeas relief was correctly granted to the defendant since the trial court "imposed a sentence which he was without power or jurisdiction to impose." *Id.* at 3.

### *Post-conviction habeas corpus is absorbed into the UPCCRA.*

¶36. Our Supreme Court's decision in *Burden* expressly centered on whether habeas corpus was available to a defendant after his conviction. The Court concluded it was. *Id.* at 3. The Constitution of 1890 declared that "[t]he privilege of the writ of habeas corpus *shall not be suspended*, unless when in the case of rebellion or invasion, the public safety may require it, nor ever without the authority of the legislature." Miss. Const. art. 3, § 21 (emphasis added). "A habeas corpus proceeding has but *one* purpose, that is to set at liberty persons illegally held[.]" *Walker v. State*, 555 So. 2d 738, 740 (Miss. 1990) (emphasis added) (internal

11

quotation marks omitted). "The purpose of the writ of habeas corpus is to give a person restrained of his liberty an immediate hearing so that it can be determined whether that person is being deprived of constitutional rights, such as the right to due process of law." *Carson v. Hargett*, 689 So. 2d 753, 755 (Miss. 1996).

¶37. In 1984, the Legislature attempted to corral the variety of common law methods a prisoner might use to attack a conviction or sentence by adopting the PCR Act, which had as its express "purpose . . . to revise, streamline and clarify the rules and statutes pertaining to post-conviction collateral relief law and procedures, to resolve any conflicts therein and to provide the courts of this state with an exclusive and uniform procedure for the collateral review of convictions and sentences." Miss. Code Ann. § 99-39-3(1). In doing so, the Act purported to "abolish[] the common law writs relating to post-conviction collateral relief, including by way of illustration but not limitation, error coram nobis, error coram vobis, and post-conviction habeas corpus, as well as statutory post-conviction habeas corpus." *Id.*

¶38. Not long after the Legislature noted this "abolishment," the Supreme Court ruled in *Walker* it was ineffective as to habeas corpus. A defendant was convicted of the possession of cocaine, and sought bail pending appeal, which was denied. *Walker*, 555 So. 2d at 739. He then sought habeas corpus relief—not in the trial court, but with the Supreme Court itself. *Id.* The Court ordered the trial court to have "a full hearing on the merits" of the request for bail. *Id.* The Attorney General protested and asked the Court to rehear its decision. *Id.* The Attorney General's core argument—as in the case before us—is that the only avenue for relief was PCR, not habeas. *Id.* The Attorney General argued "that any suggestion that the

12

matter is a habeas corpus action which should be heard in the jurisdiction of confinement is erroneous in view of Mississippi's Uniform Post-Conviction Collateral Relief Act," so "any relief beyond that . . . must be sought pursuant to . . . the Post-Conviction Collateral Relief Act, and must further be sought in the trial court of conviction." *Id.* at 740.

¶39. The Supreme Court rejected this argument. *Id.* It first determined that "the Post-Conviction Collateral Relief Act is inapplicable in this situation." *Id.* Generally speaking, "purely collateral post-conviction remedies attacking a judgment of conviction or sentence *should* be sought under authority of the Post-Conviction Collateral Relief Act since that Act, in the pure post-conviction collateral relief sense, is arguably post-conviction habeas corpus renamed." *Id.* (emphasis added) (quotation marks omitted). But "[a]rguments over nomenclature should be avoided *so long as the Act affords the relief formerly available by habeas corpus in this limited context.*" *Id.* (emphasis added). Since Walker was not attacking his conviction in the strict sense of post-conviction collateral proceedings, the Court held that it could review the habeas request. *Id.*

¶40. Six years after *Walker*, in 1996, the Court reiterated that "the State is incorrect in its argument that the writ of habeas corpus was abolished by the Post-Conviction Collateral Relief Act." *Carson*, 689 So. 2d at 755; *see also Hill v. State*, 838 So. 2d 994, 997 (¶8) (Miss. Ct. App. 2002) ("the [Supreme] [C]ourt has found that the writ of habeas corpus remains available even though the Post Conviction Relief Act explicitly establishes the procedure to replace habeas corpus in most situations").

¶41. Seeking to harmonize this jurisprudence and the PCR Act, a former member of our

Court opined that "[i]t is more accurate to say that the procedures for the writ of habeas corpus in post-conviction matters have been established by these statutes, but the writ itself remains alive." *Norwood v. State*, 846 So. 2d 1048, 1056 (¶27) (Miss. Ct. App. 2003) (Southwick, P.J., concurring). For as the Supreme Court has concluded, the "overriding intent and purpose of the [UPCCRA]" is simply to "guide and assist the judiciary in its duty to provide an orderly means of administering the post-conviction claims of a growing prison population." *Sykes v. State*, 757 So. 2d 997, 1000 (¶11) (Miss. 2000).

### *The Supreme Court returns to Legislative intent behind the UPCCRA.*

¶42. For many years, these distinctions were mostly academic. The PCR Act expressly allows for a three year statute of limitations period from the date of conviction by way of a guilty plea or after a direct appeal. *See* Miss. Code Ann. § 99-39-5(2). However, the Supreme Court implemented its own judicially crafted exception to the time-bar, which allowed a petitioner to file an out-of-time challenge if the claim involved the individual's "fundamental rights." *See generally Howell v. State*, 358 So. 3d 613, 615 (¶7) (Miss. 2023) (discussing the time-bar in the UPCCRA). Accordingly, there was little discussion after the creation of the "fundamental rights exception" on what method could be used to attack an excessive or illegal sentence, as issues involving violations of fundamental rights could be raised at any time.

¶43. However, in the *Howell* decision, the Supreme Court decreed that it would return to a faithful interpretation of the statute in accord with the express Legislative intent, in turn abolishing the "fundamental-rights exception." *Id*. Yet within *Howell* is an important caveat

that recognized there are "other arguments or doctrines" that preclude an *absolute* application of the time-bar. *Id.* at 616 (¶12). In paragraph 12 of the *Howell* opinion, the majority of the Court "acknowledge[d]" that other arguments may be used to attack the constitutionality of the statutory bars, either as applied to particular cases or on their face." The Court "further recognize[d] that, in specific cases, other arguments or doctrines, e.g., equitable tolling, might be available to afford relief from the statute of limitations." *Id.*

¶44. Indeed, it was this language in paragraph 12 the Court used as a fulcrum for reversing and rendering a judgment decided later that same year. *Hathorne v. State*, 376 So. 3d 1209, 1214 (¶15) (Miss. 2023). A PCR petitioner claimed to be illegally held, contending his indictment for possession of "ethylone" "was defective and did not charge a crime," and he "urge[d]" the "[Supreme] Court to find that actual innocence claims survive *Howell* and constitute an exception to the statutory time bar under the UPCCRA." *Hathorne*, 376 So. 3d at 1211 (¶6). The facts were unique, as both the Court of Appeals in a previous opinion and the Supreme Court agreed that Hathorne's indictment had not charged him with a crime as defined by the Legislature. *Id*. at 1212 (¶10).

¶45. In reviewing *Howell*, the Supreme Court pointed out that paragraph 12 *had* "left open the door for other challenges that are not substantive in nature[.]" *Id.* at 1214 (¶15). Without elaboration, the Court determined that it would then "turn to the facts of this case utilizing that approach." *Id*. Ultimately, the Court decreed that Hathorne's defective indictment could not be waived through inaction or action since it was "a nullity, and may be objected to at any time." *Id*. at 1215 (¶19).

¶46.    Crucially, the Court held:

> To hold otherwise in this case would preclude relief from a person, who we have determined was never charged with a crime, serving twenty years in prison, day-for-day. Granting relief in this extraordinary case is the only just outcome—to keep Hathorne in prison *under no legal requirement* would certainly constitute "cruel or unusual punishment" and an "excessive fine[]," which is expressly prohibited under our Constitution. Miss. Const. art. 3, § 28.

*Id.* at (¶20) (emphasis added).  Accordingly, the Court reversed and rendered the conviction. *Id.* at (¶21).

### *The trial court exceeded its authority in sentencing Taylor.*

¶47.    Like *Hathorne*, this appeal presents us with a unique situation.  While three opinions comprised our first review of this matter, all three opinions—the lead, a separate concurrence, and a dissent—agreed that Marcus Taylor was serving a sentence in excess of what the law authorized.  Taylor pled guilty to the crime of conspiracy to sell a Schedule III drug, which carries a maximum penalty of five years of incarceration.  *See* Miss. Code Ann. § 97-1-1 (Supp. 2007).  Nonetheless, he was sentenced to and *is still currently* incarcerated under a sentence of twenty years.[3]

¶48.    In *Hathorne,* a unanimous Supreme Court declared it would not "preclude relief from a person" who was incarcerated "under no legal requirement," as to do so would "constitute 'cruel or unusual punishment'" contrary to our Constitution.  *Hathorne*, 376 So. 3d at 1215 (¶20).  As that document guarantees: "Cruel or unusual punishment shall not be inflicted, nor excessive fines be imposed."  Miss. Const. art 3, § 28.

---

[3] The Mississippi Department of Corrections lists Taylor's release date as June 2030. It also lists his offense as "Burglary."

16

¶49. Over a century ago, our Supreme Court made clear that when a trial court acts in excess of its jurisdiction, it creates a void judgment. For "[e]ven where a court has jurisdiction of the offense charged and of the person of the accused, it may so far transcend its powers in assessing the penalty for the offense, by imposing a punishment of a character different from that prescribed by law . . . that the sentence will be void and furnish no authority for holding the accused in custody, though the conviction on which the sentence was entered was valid and correct; and in such a case the accused may be discharged on habeas corpus." *Burden*, 45 So. at 2.

¶50. As a matter of law, it is without debate that confining Marcus Taylor to a term of years in custody beyond that authorized by statute is an illegal sentence. This is an offense to our Constitution that cannot stand. For our citizens have a "fundamental right . . . to be free from an illegal sentence." *Young v. State*, 368 So. 3d 299, 304 (¶11) (Miss. 2023); *Sneed v. State*, 722 So. 2d 1255, 1257 (¶11) (Miss. 1998) ("The right to be free from an illegal sentence has been found to be fundamental").

¶51. In accord with *Howell* and *Hathorne*, we recognize in this extraordinary case that the Judiciary must act to correct a manifest injustice. In accord with *Burden* and *McHenry*, we conclude that the trial court was without authority to impose upon Taylor a sentence exceeding that authorized by the Legislature. The trial court, in error, imposed an excessive sentence on Taylor of ten years beyond the five-year maximum for the crime of which he pled guilty. In doing so, the trial court exceeded its jurisdiction, and therefore the excessive sentence is utterly void.

17

¶52. As Judge Lawrence solemnly declared regarding our original decision:

> Make no mistake about it: Taylor sits in jail, illegally held, because a judicially crafted order incorrectly provided for a fifteen-year term when five years was the statutorily mandated maximum sentence. The judicial branch created the illegal order, and this Court should have the inherent authority to correct that order. Courts lacking the ability to correct illegal and erroneous orders stands contrary to the foundational and fundamental aspect of what the courts do and stand for. It should not require grace from the Legislature for the judiciary to fix a judiciary problem.

*Taylor v. State*, No. 2023-CA-00738-COA, 2025 WL 1303363, at *7 (¶25) (Lawrence, J., concurring) (Miss. Ct. App. May 6, 2025).

## CONCLUSION

¶53. Although the trial "court had jurisdiction over both the person and the subject-matter," it did not have the "power" to "enter the particular judgment entered" against Marcus Taylor. *McHenry*, 44 So. at 834. Therefore, we order the immediate release of Marcus Taylor from his incarceration, as it unlawfully exceeds that which is authorized by law. Accordingly, we reverse the order denying post-conviction collateral relief. We render void the part of the corrected judgment sentencing Taylor to more than five years in custody.

¶54. **REVERSED AND RENDERED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. EMFINGER, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY EMFINGER, J.**

**WILSON, P.J., DISSENTING:**

¶55. Taylor's fifteen-year sentence exceeds the five-year maximum for the crime to which he pled guilty. However, the Uniform Post-Conviction Collateral Relief Act (UPCCRA)

18

provides that a motion for post-conviction relief (PCR) *must* be filed within three years after the entry of a judgment of conviction entered on a guilty plea. Miss. Code Ann. § 99-39-5(2) (Rev. 2020). Taylor filed his PCR motion *eight years* after his judgment was entered. The UPCCRA's statute of limitations includes certain statutory exceptions, but none apply here.[4] Therefore, the UPCCRA's statute of limitations bars Taylor's claim.

¶56. Prior to *Howell*, we would have addressed the merits of Taylor's claim under the so-called "fundamental-rights exception" to the statute of limitations. *Howell*, 358 So. 3d at 615 (¶¶7-8). However, *Howell* expressly "overrule[d]" "any . . . case in which the Mississippi Supreme Court ha[d] held that the courts of Mississippi can apply the judicially crafted fundamental-rights exception to constitutional, substantive enactments of the Legislature such as the [UPCCRA's] three-year statute of limitations." *Id.* at 615 (¶8). Moreover, *Howell* specifically held that a claim alleging an "illegal sentence" is *not* excepted from the UPCCRA's statute of limitations. *Id.* at 615 (¶¶7-8). Subsequently, in *Hathorne v. State*, 376 So. 3d 1209, 1213-14 (¶15) (Miss. 2023), the Supreme Court reiterated that the UPCCRA's statute of limitations "preclude[s] relief" on a claim alleging an "illegal

---

[4] "[C]ases in which the petitioner claims that his sentence has expired" are excepted from the statute of limitations. Miss. Code Ann. § 99-39-5(2)(b). However, the Mississippi Supreme Court has held that this exception does not apply to a case, such as this one, in which the petitioner argues that his actual "sentence [is] illegal," and the legal sentence he should have received "would have expired." *Sneed v. State*, 722 So. 2d 1255, 1257 (¶10) (Miss. 1998), *overruled on other grounds by Howell v. State*, 358 So. 3d 613, 615 (¶8) (Miss. 2023). The Court stated, "This is obviously not a claim that the sentence has expired. It is a claim that the sentence is somehow incorrect or illegal. This claim is not excepted from the time bar by virtue of the statute." *Id.* at 1257 (¶11). Likewise, Taylor's sentence clearly has not expired. Rather, he claims his *un*expired sentence is illegal.

19

sentence" "even if the claim [is] meritorious."[5]  Therefore, under *Howell* and *Hathorne*, the UPCCRA's statute of limitations bars Taylor's claim.

¶57.    The UPCCRA was enacted "to revise, streamline and clarify the rules and statutes pertaining to post-conviction collateral relief law and procedures, to resolve any conflicts therein and to provide the courts of this state with an exclusive and uniform procedure for the collateral review of convictions and sentences."  Miss. Code Ann. § 99-39-3(1) (Rev. 2020).  To that end, the UPCCRA expressly "abolishes the common law writs relating to post-conviction collateral relief, including by way of illustration but not limitation, . . . post-conviction habeas corpus."  *Id.*  Therefore, a petition for *post-conviction* habeas corpus must be filed as a PCR motion subject to the UPCCRA's requirements *and limitations*.  *Id.*

¶58.    The majority argues that we may consider the merits of Taylor's claim because the trial court lacked "jurisdiction" to impose a sentence that exceeded the statutory maximum. Notably, claims "[t]hat the trial court was without jurisdiction to impose sentence" and "[t]hat the sentence exceeds the maximum authorized by law" *are* cognizable grounds for relief under the UPCCRA.  Miss. Code Ann. § 99-39-5(1)(b), (d).  However, just as notably, in the very same section of the Act, the Legislature did *not* include such claims in the list of exceptions from the UPCCRA's statute of limitations.  *Id.* § 99-39-5(2).  Thus, the Legislature expressly authorized relief on such grounds, but it also made clear that such

---

[5] The majority's reliance on *Hathorne* is misplaced for two significant reasons.  First, *Hathorne* specifically emphasized that Hathorne's claim was *not* barred by the statute of limitations, stating: "First, *and perhaps most weighty*, this is Hathorne's first PCR motion, *and it was timely filed*."  *Id.* at 1214 (¶18) (emphasis added). Second, as noted in the text, *Hathorne* specifically reaffirmed that the UPCCRA's statute of limitations bars even "meritorious" claims alleging an "illegal sentence."  *Id.* at 1213-14 (¶15).

20

claims *are* subject to the three-year statute of limitations.

¶59.    Accordingly, the issue in this case is simply whether this Court is obligated to enforce, or may instead ignore, the statute of limitations on PCR claims that the Legislature enacted. The Mississippi Supreme Court decisively answered this question in *Howell*, holding:

> The Legislature . . . does have authority to fix reasonable periods within which an action shall be brought and, within its sound discretion, determine the limitation period in post-conviction relief cases. . . .  It is a well-settled principle that a state may attach reasonable time limitations to the assertion of federal constitutional rights.

*Howell*, 358 So. 3d at 615 (¶9) (brackets, citations, and quotation marks omitted).  The Court further held that it could not "lawfully amend or ignore" the UPCCRA's statute of limitations, a "constitutionally sound law enacted by the Legislature."  *Id.* at 616 (¶12). Thus, *Howell* definitively answers the dispositive question in this case.

¶60.    The law has not changed since we previously affirmed the denial of Taylor's PCR motion.  The UPCCRA's statute of limitations still bars Taylor's claim.  Therefore, I would deny the motion for rehearing, and I respectfully dissent.[6]

**EMFINGER, J., JOINS THIS OPINION.**

---

[6] As noted in the original opinion affirming the denial of Taylor's PCR motion, under this Court's decision in *Shies v. State*, 185 So. 3d 1081 (Miss. Ct. App. 2016), there is a question whether Taylor would be entitled to relief even if the statute of limitations did not bar his claim.  *See Taylor v. State*, No. 2023-CA-00738-COA, 2025 WL 1303363, at *6 n.8 (Miss. Ct. App. May 6, 2025).  Since the statute of limitations does bar Taylor's claim, I do not address the issue.